IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| JOHN F. WHITE III, | CV 04-1265-BR |
|     Plaintiff, | OPINION AND ORDER |
| v. | |
| LIFE INSURANCE COMPANY OF NORTH AMERICA and BURLINGTON NORTHERN SANTA FE RAILROAD LONG TERM DISABILITY PLAN, | |
|     Defendants. | |

**MEGAN E. GLOR**
Swanson Thomas & Coon
820 S.W. Second Avenue, Suite 200
Portland, OR  97204
(503) 228-5222

    Attorneys for Plaintiff

**KATHERINE S. SOMERVELL**
Bullivant Houser Bailey PC
888 S.W. Fifth Avenue, Suite 300
Portland, OR  97204
(503) 295-0915

    Attorneys for Defendants

**BROWN, Judge.**

Plaintiff John F. White III brings this action pursuant to 11 U.S.C. § 1132(a) of the Employee Retirement Income Security Act of 1974 (ERISA) against Defendants Life Insurance Company of North America (LINA)[1] and Burlington Northern Santa Fe Railroad Long Term Disability Plan (LTD Plan) to recover benefits under the LTD Plan.

Plaintiff filed a Motion for Summary Judgment (#18) and Defendants filed a Cross-Motion for Summary Judgment (#28). The Court, however, struck Defendants' Cross-Motion because it was not filed timely. In any event, the parties have stipulated the appropriate procedure for resolving this matter is a bench trial on the administrative record pursuant to *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir.)(*en banc*), *cert. denied*, 528 U.S. 964 (1999). Thus, the Court has undertaken and completed a thorough review and consideration of the administrative record and the parties' legal arguments.

For the reasons that follow, the Court concludes Plaintiff

---

[1] Plaintiff refers to Defendant as CIGNA Life Insurance Company of North America. Defendant, however, refers to itself as Life Insurance Company of North America. Although both parties use the abbreviation "LINA" to refer to Defendant, Plaintiff sometimes calls Defendant "Cigna." Neither party explains the exact relationship between "Cigna" and LINA, although many of the documents in the Administrative Record are on Cigna letterhead. According to LINA's Corporate Disclosure Statement, LINA is owned by Connecticut General Corporation, which in turn is owned by CIGNA Holding Inc., which in turn is owned by CIGNA Corporation.

is not entitled to benefits under the LTD Plan.

## **FINDINGS OF FACT**

The facts are largely undisputed. Pursuant to Fed. R. Civ. P. 52(a), the Court makes the following factual findings.

Plaintiff worked for Burlington Northern Santa Fe Railroad (BNSF) from December 1974 until September 2000 as a Terminal and Field Trainmaster. Plaintiff ceased working for BNSF on September 25, 2000, due to prostate cancer and severe depression. Plaintiff applied for short-term disability (STD) benefits through BNSF. Plaintiff's claim for STD benefits was approved effective September 30, 2000. Plaintiff continued to receive STD benefits until March 2001. On March 21, 2001, Plaintiff applied for benefits under the LTD Plan. LINA is the claims administrator for the LTD Plan.

On April 23, 2001, LINA approved Plaintiff's LTD claim and started paying benefits effective March 25, 2001. In October and December 2001, Plaintiff received notices from the Railroad Retirement Board informing him that he was entitled to a disability annuity under the Railroad Retirement Act (RRA). Plaintiff provided copies of these notices to LINA. Plaintiff's RRA disability annuity benefit is $2,425.24 per month. A dispute about the amount of offset between Plaintiff's LTD benefit and his RRA benefit ensued, but it is not relevant to Plaintiff's

3 - OPINION AND ORDER

action in this Court.

On February 28, 2002, LINA wrote to Plaintiff and asked him to provide updated medical information. Specifically, LINA asked Plaintiff to have his attending physician complete a Supplementary Disability Claim Form and return it to LINA by April 15, 2002. On March 11, 2002, Plaintiff's attorneys responded to this letter on behalf of Plaintiff. Plaintiff's attorneys accused LINA of "beginning to demonstrate a definite bad-faith . . . in its handling of this case." In addition, Plaintiff's attorneys told LINA that Plaintiff was still under the care of A. Kelly Conrad, M.D. Plaintiff's attorneys stated, "There is no legitimate reason that [LINA] has, at this time, to ask Dr. Conrad to fill out another copy of the same form that was completely so recently" because Dr. Conrad had responded to a LINA questionnaire less than five months previously. Plaintiff's attorneys also asked LINA to explain why a new form was needed. LINA did not respond to this letter, and neither Plaintiff nor his attorneys provided additional medical records to LINA.

On July 24, 2002, LINA again wrote to Plaintiff and asked him to provide a Supplementary Disability Claim Form completed by his attending physician by August 24, 2002. LINA also reminded Plaintiff that he was required under the terms of the LTD Plan to provide written proof of continued disability and regular attendance of a physician. LINA also advised Plaintiff that

4 - OPINION AND ORDER

failure to cooperate with LINA in the administration of the claim might result in termination of benefits. Plaintiff did not respond to this letter.

On September 23, 2002, LINA again wrote to Plaintiff, this time sending the letter in care of Plaintiff's attorneys. LINA reminded Plaintiff that after benefits are paid for 24 months under the LTD Plan, Plaintiff must establish he is disabled from any occupation to continue to be entitled to LTD benefits (for the first 24 months, Plaintiff only had to establish he was disabled from his regular occupation). LINA explained it was in the process of evaluating Plaintiff's continuing eligibility for benefits after March 26, 2003, which would be the end of the 24-month period. LINA enclosed a Disability Questionnaire and asked Plaintiff to complete and to return it. LINA also informed Plaintiff that it had been trying to get records from Dr. Conrad without success. LINA asked Plaintiff to contact Dr. Conrad and encourage him to provide LINA with copies of Plaintiff's medical records and test results from January 1, 2002, forward. LINA also told Plaintiff that it would not have medical evidence to substantiate Plaintiff's continued disability under the LTD Plan if LINA did not receive this information. Neither Plaintiff nor his attorneys responded to this letter.

On October 28, 2002, LINA faxed a letter to Plaintiff's attorneys and informed them that it had not received a response

to the September 23, 2002, letter. LINA asked Plaintiff's attorneys to "forward copies of office records including test results and an outline of the limitations and/or restrictions which preclude [Plaintiff] from returning to work." On October 31, 2002, apparently in response to this letter, Plaintiff's attorneys sent an email to Christopher Neal, LINA's outside counsel in the offset litigation matter. Plaintiff's attorneys informed Neal that they had received a fax from LINA "requesting medical information from [Plaintiff's] treating doctor." Plaintiff's attorney told Neal they did not think it was appropriate to contact LINA directly "given the pending lawsuit and your representation." Neal responded immediately and told Plaintiff's attorneys to "[p]lease feel free to comply with CIGNA's request in this instance, however, to ensure no slow-down in processing of the claim." Plaintiff's attorneys did not respond to LINA, and no one provided any records to LINA.

On December 16, 2002, LINA again wrote to Plaintiff in care of his attorneys. LINA outlined its previous correspondence and explained it did not have any documentation "to outline [P]laintiff's treatment plan, course of treatment, or the limitations to preclude his return to work or limits on daily activities." LINA again asked Plaintiff to contact Dr. Conrad and to obtain the requested information. LINA told Plaintiff that it would close his claim if it did not receive the requested

medical records and test results from his treating physician before January 8, 2003, because LINA did not have any medical information to support the continuation of LTD benefits.

On December 23, 2002, Plaintiff's attorneys responded to LINA. Plaintiff's counsel stated she had received LINA's December 16, 2002, letter on December 23, 2002, and that "ethical rules of the Oregon State Bar prohibited me from contacting you directly prior to this time." As noted, the record reflects, however, Plaintiff's counsel had received authorization on October 31, 2002, to contact LINA directly regarding Plaintiff's medical records. Plaintiff's counsel told LINA that she would "promptly respond to your request for medical documentation" and would ask Dr. Conrad to "complete the six page, pink 'Disability Questionnaire Activities of Daily Living' form. If there is other information you require, please so advise immediately." Plaintiff's counsel also asked LINA to keep Plaintiff's file open beyond the January 8, 2003, deadline to allow additional time to obtain the requested records.

On January 2, 2003, Plaintiff's attorneys sent LINA a Disability Questionnaire Activities of Daily Living form that had been completed by Plaintiff. Although Plaintiff's attorneys did not mention the status of the other records that LINA had repeatedly requested, they asked LINA, nonetheless, to "advise as soon as possible if additional information is required."

7 - OPINION AND ORDER

In response to the question "In your own words, tell us why you cannot work in your own or any occupation" on the Disability Questionnaire, Plaintiff replied, "I am disabled as my physician has attested to numerous times." In response to the question "What is the primary physical and/or mental condition preventing you from working now?", Plaintiff responded, "all conditions previously documented by previous records."

On February 10, 2003, LINA wrote to Plaintiff's attorneys and informed them that it had not received medical information "to support a decreased functionality which would preclude [Plaintiff] from returning to work in his or any occupation," and, therefore, benefits would not be payable beyond January 31, 2003. LINA set forth two reasons for its denial of Plaintiff's LTD benefits: Plaintiff had not complied with the LTD Plan's Claimant Cooperation Provision and Plaintiff did not provide satisfactory proof of his continued disabilty as required under the terms of the LTD Plan. LINA also informed Plaintiff and his attorneys of Plaintiff's right to appeal the decision and the procedure for doing so.

On April 21, 2003, Plaintiff's attorneys wrote to Dr. Conrad and asked for a complete copy of Plaintiff's medical records. This letter appears to be the first time Plaintiff's attorneys contacted Dr. Conrad.

On May 19, 2003, Plaintiff's attorneys sent LINA a Request

for Review of the denial of benefits. The Request for Review was accompanied by approximately 90 pages of medical records. In the Request for Review, Plaintiff's attorneys argued Plaintiff had fully cooperated with LINA and the medical records established Plaintiff's continuing disability.

On September 3, 2003, LINA affirmed its termination of Plaintiff's benefits. On December 2, 2003, LINA again wrote to Plaintiff's attorneys and informed them that it had affirmed its denial of Plaintiff's entitlement to continued LTD benefits.

## CONCLUSIONS OF LAW

I. **Standard of Review Under ERISA.**

A denial of benefits challenged under ERISA is reviewed *de novo* unless the benefit plan gives the administrator discretion to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Review is *de novo* unless the discretion to grant or to deny claims is unambiguously retained by the plan administrator. *Kearney v. Standard Ins. Co.*, 175 F.3d at 1090. The Court's first inquiry, therefore, is whether the LTD Plan at issue grants the requisite discretion to the plan administrator.

The parties agree the LTD Plan does not unambiguously confer discretion to the plan administrator. The parties contend the Court, therefore, must review the plan administrator's decision

9 - OPINION AND ORDER

*de novo*.

The Court has reviewed the LTD Plan and does not find any language that retains to the administrator the discretion to grant or to deny claims. The Court, therefore, reviews *de novo* the plan administrator's decision to terminate Plaintiff's LTD benefits.

**II. Plaintiff Is Not Entitled to Benefits Because He Did Not Comply With the Terms of the Policy.**

The LTD Plan provides, in pertinent part:

> **Claimant Cooperation Provision**
>
> Failure of a claimant to cooperate with the Insurance Company in the administration of the claim may result in termination of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.
>
> * * *
>
> Within 30 days of a request, written proof of continued Disability and of regular attendance of a physician must be given to the Insurance Company.

The undisputed record establishes Plaintiff failed to comply with this provision. Between February and December 2002, LINA sent Plaintiff and/or his attorneys five separate requests for updated medical records. Each letter specifically identified the medical records LINA required Plaintiff to provide. Neither Plaintiff nor his attorneys responded meaningfully to any of

these requests.  In addition, Plaintiff has not offered any explanation for his failure to respond to LINA's requests.  The Court notes the ethical rules of the Oregon State Bar did not constitute an impediment to Plaintiff's ability to respond directly to LINA's requests for updated medical records.

Accordingly, the Court concludes Plaintiff's failure to comply with the Claimant Cooperation Provision justified LINA's denial of benefits to Plaintiff under the LTD Plan.  The Court, therefore, need not reach the issue whether the medical records provided by Plaintiff's counsel several months after LINA's termination of Plaintiff's benefits established Plaintiff's continued disability.

## CONCLUSION

Based on the Court's *de novo* review of the administrative record and the memoranda of the parties filed in this action, the Court finds the record justifies LINA's denial of benefits to Plaintiff under the LTD Plan because of Plaintiff's failure to comply with the Plan's Claimant Cooperation Provision.  Accordingly, the Court concludes Plaintiff is not entitled to relief and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of October, 2005.

/s/ Anna J. Brown
Anna J. Brown

11 - OPINION AND ORDER

United States District Judge